GOLDING BROS. CO., INC. v. UNITED STATES

No. 5444.—Invoice dated Vichte, Belgium, December 20, 1938.
Certified December 22, 1938.
Entered at New York January 6, 1939.
Entry No. 782827.

Third Division, Appellate Term

(Decided September 26, 1941)

*Siegel & Mandell* (*Samuel T. Siegel* of counsel) for the appellant.
*Paul P. Rao*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the appellee.

Before CLINE and KEEFE, Judges

CLINE, Judge: This is an application for review of the decision of the trial court in *Golding Bros. Co., Inc.* v. *United States*, Reap. Dec.

5005, involving the value of mattress tickings exported from Belgium in December, 1938. The invoice contains a number of different qualities of tickings at different prices in Belgian francs per yard. With the exception of quality "Ostend, 894, 55¼" Spring Air Panel 1939," the goods were entered at the invoice unit prices and 2½ per centum for tax was added on entry. The unit value of quality "Ostend, 894, 55¼" Spring Air Panel 1939" was advanced on entry from the invoice value of 5.36 to 5.45 francs per yard and the 2½ per centum for tax was added also as in the other items. Some of the merchandise was appraised by the appraiser at unit values in United States currency and some in Belgian francs.

No briefs were filed before this division but the parties submitted the case on the briefs filed below without oral argument.

There is some confusion in the record as to the issue and the basis of appraisement of some of the items. The appraiser marked the summary sheet with the words "Basis U. S. Value & Cost of Production" but there is no statement in the invoice showing the basis of appraisement of the different items. The statements as to the issue and basis of appraisement in the briefs of the parties do not agree in every detail. Counsel for the plaintiff below states in his brief:

Two qualities of cotton cloth, to wit: Clairemont #933 and Newfoundland #978, were advanced by the appraiser in accordance with the provisions for "foreign value" as defined in Section 402–C of the Tariff Act of 1930, and the remaining qualities were appraised in accordance with Section 402–e of the Tariff Act of 1930 (United States value), presumably on the theory of the absence of a foreign or export value.

In order to narrow the issue, plaintiff makes no claim except on those qualities listed in Schedule "A", hereto annexed, contending, that there was a foreign value in the country of exportation at the time of exportation of the 56″ qualities here in question, and an export value to the United States for the 41″ qualities.

It is further admitted by the importers that if it should finally be determined that the proper basis for dutiable value is "United States value" as defined in Section 402–e of the Tariff Act of 1930, the appraised values in United States currency would be the correct basis for dutiable value.

Counsel for the defendant ignored in his brief the items which the plaintiff claimed should be appraised on the basis of foreign value. He states the issue as follows:

The merchandise at issue was entered on the basis of export value and appraised on the basis of United States value.

There were other items included in this importation which were appraised on the basis of foreign value. These items were entered on the basis of export value. The claims of the importer as to those items which were appraised on the basis of foreign value were abandoned at the trial. As a result of the abandonments, there remained at issue only those items which were appraised on the basis of United States value. The proof at the trial was limited to those items which are enumerated in Schedule A and B of the importer's brief.

There appears to be no schedule B attached to importer's brief. Schedule A, incorporated in plaintiff's brief, contains the following

items on which claim was made together with the entered and appraised values:

| | Entered Value (per yard) | Appraised Value (per yard) |
|---|---|---|
| Quality Ostend #894, Spring Air Panel 1939, 55¼″ (frs) | $5.45 | $0.2308 |
| Quality Ostend #894, Plain Borders 56″ | 5.08 | .2161 |
| Quality Clairemont #933 Rupert 56″ | 4.45 | (frs) 4.70 |
| Quality Melbourne #900, Blossomtime 56″ | 3.90 | $.1477 |
| Quality Melbourne #900, Blossomtime 41″ | 3.24 | .1477 |
| Quality Lake George #754, Deal 56″ | 6.00 | .2449 |
| Quality Ostend #894, Lisbona 56″ | 5.45 | .2308 |
| Quality Clairemont #933, Weybridge 56″ | 4.45 | (frs) 4.70 |
| Quality Newfoundland #978, Scotland 56″ | 7.35 | 7.60 |

The record does not show that counsel for the plaintiff abandoned his claim on all of the qualities which he asserts were appraised on the basis of foreign value, as stated by counsel for the defendant in his brief. The statement in the record referred to reads as follows:

Mr. SIEGEL. In this case, we accept the findings of the Appraiser on: "Clairemont, 933, 56 inch Plain Border; Piedmont, 921, both 56 inch and 41 inch". On the rest of the qualities I offer in evidence an affidavit signed by and sworn to by Mr. Bekaert, dated September 5, 1939.

It appears that the three qualities of ticking relating to which the plaintiff below announced that he accepted the findings of the appraiser are not enumerated in the schedule attached to his brief giving the qualities upon which claim is made. In a subsequent part of his brief, counsel for the plaintiff below refers to all the qualities of 56-inch ticking enumerated in schedule A, claiming that the record shows offers of the same in the Belgian market which established foreign value.

We are of opinion that counsel for the defendant below is in error in his statement that all of the qualities in issue were appraised on the basis of United States value because it is inconceivable that the qualities concerning which the appraiser found unit values in Belgian francs were appraised on that basis. An appraisement on the basis of United States value must necessarily be in United States currency.

The evidence consists solely of documentary proof. The plaintiff below introduced as exhibit 1 an affidavit of Mr. Eugene Bekaert, a partner of the exporting firm. This affidavit was executed before a United States consul in Belgium on September 12, 1939. The defendant introduced exhibit 2, which is a report of Treasury Representative Charles Schlager, No. 301/279, dated December 15, 1938. We have examined these documents carefully, and, as they were reviewed in detail in the decision of the trial court, we deem it unnecessary to repeat the same details in this decision.

The appellant herein, in an endeavor to establish export value with relation to the qualities appraised on the basis of United States value, relies on the statement in exhibit 1 to the effect that the invoice

price of the 41-inch goods "is the price at which our firm would have been willing to receive from anyone in the United States, desiring to purchase the same quality in the same width, and that the price for export to the United States at the time of shipment here in question is the one declared on the invoice as the present market value of the quality noted." Substantially the same statement in an affidavit of the same affiant was considered by this division in *Golding Bros. Co., Inc.* v. *United States*, Reap. Dec. 5272. In finding that such statement in the affidavit was not sufficient to establish export value, the court, after quoting the statement, said that it—.

is similar to the statement considered in *Golding Bros. Co., Inc.* v. *United States*, Reap. Dec. 5196, and therein held insufficient to show that the merchandise was freely offered for sale for export to the United States, citing *United States* v. *Oceanic Trading Co.*, Reap. Dec. 3233. A similar statement appears in an excerpt quoted from an affidavit in the case of *Golding Bros., Inc.* v. *United States*, Reap. Dec. 3680, 68 Treas. Dec. 1310. The court held in that case that the importer had not established export value and that decision was affirmed on appeal. *Golding Bros. Co. Inc.*, v. *United States*, 24 C. C. P. A. 15, T. D. 48289.

We are of opinion that, in harmony with the ruling in the decision cited, the evidence submitted by the plaintiff below is not sufficient to establish export value of any of qualities herein involved.

Certain price lists covering goods offered in Belgium are referred to in exhibit 1 and made a part thereof. They are explained in the affidavit as follows:

Attached herewith are various price-lists to dealers in Belgium dated October 19th 1938 covering identical merchandise as that exported to Golding Brothers Company Inc., and which price-lists were effective to March 1939 and which prices included the 2½% Belgian transmission tax. These price lists show Ostend No. 894, 140 cms which is equivalent to 56″ at a price of Frs: 6.10 per meter which is equivalent to Frs: 5.57 per yard of 56″ or Frs: 5.51 for 55¼″ fabric, there being only a difference of 1% in value between the 56″ width and the 55¼″ width.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

On the price-list herewith attached you will note quality Melbourne No. 900, 56″ Jacquard which shows a price of Francs: 4.35 per meter of 140 cms which is equivalent to Francs: 3.97 per yard of 56″ Jacquard. Also note on the price-list quality Lake George No. 754 56″ Jacquard which shows a price of Francs: 6.70 per meter of 140 cms which is equivalent to Francs: 6.12 per yard of 140 cms or Francs: 6.12 per yard of 56″ width.

In considering this information in the exhibit, the trial court said:

With respect to the 56-inch width fabrics, the affiant, in said exhibit 1, sets forth certain prices for the qualities of such fabrics in question and refers to the price lists to dealers in Belgium attached to the said affidavit, exhibit 1. Said price lists are entirely in a foreign language, except for the names of the different qualities listed therein, and, in my opinion, are entitled to little, if any, probative value in considering this case. Neither do the price lists and confirmations of orders attached to the special agent's report, exhibit 2, offer support to the plaintiff's contention, of a foreign value for said merchandise.

The evidence offered by plaintiff relating to the 56-inch width fabrics is not convincing and, considered with the statement attributed to the plaintiff's wit-

ness by the special agent in his report, said exhibit 2, that "the merchandise as shipped to the United States is not adapted to the Belgian market," the record herein, in my opinion, is wholly insufficient to establish a dutiable foreign value for said 56-inch width fabrics.   *   *   *

Exhibit 2 contains the following information under the heading of foreign value:

The Golding Bros. qualities appear to have been offered in the home market as evidenced by copies of letters offering the merchandise, which were submitted with the manufacturer's affidavit.

Mr. Bekaert admits that the merchandise as shipped to the United States is not adapted to the Belgian market and no actual sales have been made during the past year.

Many of the same qualities in "all overs" as sold.to Golding Bros. are freely offered and sold in England through Bekaert's sales agent (A. T. Bowden & Co. Ltd.). The agent simply takes orders and the merchandise is shipped direct to the customer. A 3% selling commission is paid to A. T. Bowden & Co. which is included in the invoice prices. Under Exhibit B are submitted price-lists for the English market as follows:

Price-list effective Jan. 14, 1938<br>
"     "     "     April 15,  "<br>
Increase in price effective Nov. 16, 1938

Attached to exhibit 2 are a number of photostatic copies of offers, confirmations, and invoices relating to transactions between manufacturer in this case and firms in Great Britain, the prices of the goods being mainly in British currency. The merchandise in this case was exported after the enactment of the Customs Administrative Act of June 25, 1938 wherein section 402 (c) of the Tariff Act of 1930, defining foreign value, was amended in section 8 by inserting the phrase "for home consumption" after the words "freely offered for sale." The provision, as amended, reads as follows:

FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale *for home consumption* to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Under this statute as amended, offers of merchandise for export to countries other than the United States cannot be considered for the purpose of establishing foreign value and the ruling in *United States* v. *Livingston & Southard, Inc.*, 23 C. C. P. A. 214, T. D. 48060, holding that such offers and sales should be considered in determining foreign value, is no longer effective. Therefore, the photostatic copies of offers, confirmations and invoices attached to exhibit 2 are valueless in this case.

The reference in the report, exhibit 2, to increased prices effective November 16, 1938, is evidently based on a statement in a letter

attached to the exhibit dated November 16, 1938, addressed to Messrs. A. T. Bowden & Co., Ltd., Condor House, St. Paul's Churchyard, London E C 4, reading as follows:

Gentlemen,

It will be necessary to rise our prices because of the regularly depreciation of the pound.

Our prices were based on the rate of 148.-francs for one pound and actually the rate is 138, what is equal to a depreciation of 7 à 8%.

It will be necessary to majorate all prices with 4% and please advise the customers accordingly.

Thanking you in anticipation, we are, Dear Sirs,

Very truly yours

As this letter relates to sales of goods to Great Britain only, it is not competent evidence for the purpose of establishing foreign value under section 402 (c), as amended, and, accordingly, we disregard the statement in the Treasury representative's report, exhibit 2, to the effect that the prices of tickings increased on November 16, 1938.

There are sixteen price lists attached to exhibit 1. They all bear the date of October 19, 1938 and each one is addressed to a different firm in Belgium. The affiant states in his affidavit that these price lists cover, "identical merchandise as that exported to Golding Brothers Company Inc., and which price-lists were effective to March 1939 and which prices included the 2½% Belgian transmission tax." The trial court disregarded these price lists because, "with the exception of the different qualities listed therein," they are in a foreign language. We have examined them carefully and find that the printed matter on all, except one, is in a language other than English but they all contain the same quality numbers in English and the same prices for the goods. In the one price list in which the printed matter is in English, foreign words appear following the words "shipment" and "payment" but there is sufficient information on that document to indicate that it is a price list giving values of the qualities listed therein. The width of the fabrics is given as 1.40 which the affiant explains in exhibit 1 is 140 cms., equivalent to 56 inches, which is the width of most of the qualities herein involved. Only three of the 56-inch qualities listed in schedule A, above quoted, are contained in the price lists. They are Melbourne 900, Ostend 894, and Lake George 754, the values thereof being quoted at francs 4.35, 6.10 and 6.70 per meter respectively.

It is well settled that price lists are competent evidence and that they are to be regarded as offers for sale. In *United States* v. *T. E. Ash et al*, 22 C. C. P. A. 395, T. D. 47401, the record contained two copies of price lists in the German language and one in English and the court held that they should be considered and weighed as evidence. In view of the decision cited, we are of opinion that the trial court erred, as a matter of law, in giving no weight to the price lists because

they are not all written in the English language.    They will be weighed by this division with all other evidence in the case in the determination of the value of the qualities herein involved.

It is shown in exhibit 2 that the Treasury representative visited the manufacturing firm on July 27 and November 28, 1938, the latter date being subsequent to the issuance of the price lists attached to exhibit 1, and he states that Mr. Bekaert admitted "that the merchandise as shipped to the United States is not adapted to the Belgian market and no actual sales have been made during the past year."    It also appears from exhibit 2 that the records of the exporting company show that no sales of the Golding qualities were made to others, except those reported to firms in Great Britain.    The affiant does not state in exhibit 1 that he freely offered the tickings to all purchasers in the principal market of Belgium for home consumption at the prices quoted in the price lists.    He merely attaches the price lists to his affidavit and explains the deductions which should be made to reduce the values in meters named in the price lists to the value in yards, the unit of quantity on the invoice.

Giving due weight to the price lists and all the other evidence in the case, we find that the weight of evidence fails to establish a foreign value for the goods, and, as it is our opinion that the plaintiff failed to establish an export value, we hold that the plaintiff below failed to overcome the presumption of correctness attaching to the appraisement.    We find that the appraised values are the dutiable values of the merchandise.    The decision below is affirmed.    Judgment will be entered for the appellee.